In re R.V. SEGARS CO., INC., Debtor,

The SOUTH CAROLINA NATIONAL BANK, Plaintiff,

v.

REPUBLIC NATIONAL BANK, Farmers Home Administration and Ralph C. McCullough, II, Trustee, Defendants.

Bankruptcy No. 82–1913.
Adv. No. 83–1062.

United States Bankruptcy Court, D. South Carolina.

Jan. 4, 1985.

Stanley H. McGuffin, Law Dept., Columbia, S.C., for plaintiff.

Mary G. Slocum, Asst. U.S. Atty., Columbia, S.C. for Fm.HA.

Ralph C. Robinson, Jr., Columbia, S.C., for Republic.

Ralph C. McCullough, II, Columbia, S.C., trustee.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

The South Carolina National Bank ("SCN") commenced this adversary proceeding to determine the priority of liens claimed by SCN, Republic National Bank ("Republic") and Farmers Home Administration ("FHA") on certain funds held by the Trustee for distribution to creditors. For the reasons hereinafter set forth, the court concludes that the liens of SCN and Republic are superior to and take precedence over the lien claimed by FHA.

## STATEMENT OF FACTS

R.V. Segars Co., Inc. (the "debtor") filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code (11 U.S.C. § 701 *et seq.*) on November 12, 1982, and Ralph C. McCullough, II has been appointed by the court as the Trustee for the debtor estate ("the estate").

SCN filed a claim against the estate for $79,079.80. The debt upon which the claim is based is a note, dated April 16, 1982, secured by a security interest in numerous warehouse receipts issued to the debtor by the Department of Agriculture of the State of South Carolina. The warehouse receipts represented one hundred-forty (140) tons of peanuts stored in various state warehouses.

Republic filed a claim against the estate for $43,315.79. Republic's claim, based upon a note dated May 13, 1982, was secured by a security interest in a state warehouse receipt issued by the Department of Agriculture of the State of South Carolina. Republic's warehouse receipt represented ten (10) tons of peanuts.

FHA also filed a claim against the estate for approximately $3,500,000. The various notes upon which the claim is based are secured by several real estate mortgages and by security agreements affording a security interest in goods and crops grown by the debtor. The notes held by FHA were executed between July of 1978 and August of 1981. During this time, FHA properly perfected its security interest in crops by filing financing statements according to South Carolina law. FHA was aware that, between 1978 and 1981, the debtor was storing some of its peanuts in state warehouses and that negotiable warehouse receipts were being issued to the debtor for the peanuts.

The warehouse receipts in which SCN and Republic had security interests were negotiated and delivered to them by the debtor. Prior to the filing of the debtor's petition for relief under Chapter 7, SCN and Republic jointly took possession of the peanuts represented by the warehouse receipts and jointly sold them to Sylvania Peanut Company and Southern of Rocky Mount, Inc. Sylvania issued an $11,706.10 check payable to SCN, Republic, FHA and the debtor. Southern issued a check payable to the same payees for the sum of $8,015.19. Subsequent to the debtor's fil-

ing for relief, these checks were delivered to the Trustee as property of the estate.

The Trustee cashed the Sylvania check, and presented the Southern check for payment, but it was unpaid and returned to the Trustee due to insufficient funds in the bank. The Trustee learned that Southern had filed a petition for relief under Chapter 7 prior to the time the check was presented for payment.

Pursuant to this court's order dated November 18, 1983, the Trustee distributed the net proceeds of the debtor's estate to FHA; however, the Trustee has escrowed the sum of $11,706.10 (the Sylvania check proceeds) pending a decision in this adversary proceeding.

## ISSUE

The only issue before the court is whether SCN and Republic, as holders of the warehouse receipts, take priority over the lien of FHA in the proceeds of the debtor's peanut crops.

## DISCUSSION AND CONCLUSION

The resolution of this priority dispute will be determined by state substantive law. *U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). Accordingly, the court will consider the relevant portions of Articles 7 and 9 of the Uniform Commercial Code as adopted in South Carolina. S.C. Code § 36–7–101 *et seq.* and § 36–9–101 *et seq.* (1976).

Section 36–9–312 of the South Carolina Code (1976), which contains the provisions concerning the priority of conflicting security interests states:

(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:

(a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under § 36–9–204(1) and whether it attached before or after filing;

(b) in the order of perfection unless both are perfected by filing, regardless of which security interest attached first under § 36–9–204(1) and, in the case of a filed security interest, whether it attached before or after filing; and

(c) in order of attachment under § 36–9–204(1) so long as neither is perfected.

Section 5(a) is inapplicable to this case as the interests of SCN and Republic were perfected by possession rather than by filing. Section 5(c) is inapplicable because the security interests of all parties were perfected.

If there were no other rules to govern priority, subsection (b) would be applicable; and under subsection (b), FHA would prevail because its security interest was perfected earlier than the security interests of SCN and Republic. See, *Philadelphia National Bank v. Irving R. Boody Co., Inc.*, 1 U.C.C. Rep.Serv. 560 (Arb.Dec.1963) (Funk, Arb.). But, according to § 36–9–312(1), § 36–9–309 overrides the basic priority rule when there are "security interests in negotiable instruments, documents or securities." Section 36–9–309 provides:

Nothing in this chapter limits the rights of a holder in due course of a negotiable instrument (§ 36–9–302) or a holder to whom a negotiable document of title has been duly negotiated (§ 36–7–501) or a bona fide purchaser of a security (§ 36–8–301) and such holders or purchasers take priority over an earlier security interest even though perfected. Filing under this Chapter does not constitute notice of the security interest to such holders or purchasers.

If SCN and Republic can qualify for one of the above § 36–9–309 exceptions, their liens would take precedence over that of FHA.

This court finds that both SCN and Republic have so qualified. The warehouse receipts held by SCN and Republic are doc-

uments of title and satisfy the requirements of negotiability as set forth in this court's decision in *In re George B. Kerr, Inc.,* 25 B.R. 2 (1981), *aff'd,* 696 F.2d 990 (4th Cir.1982).[1] The parties have stipulated that (1) the warehouse receipts were properly negotiated and delivered by the debtor to SCN and Republic; and (2) SCN and Republic qualify as holders of duly negotiated documents of title under S.C.Code § 36–7–501(4) (1976). Therefore, SCN and Republic, as holders of fully negotiated documents of title under § 36–9–309, must prevail over FHA's perfected security interest in the peanuts, regardless of when that interest was perfected.

FHA argues that § 36–7–503 should determine the lien priority, thereby making the crop lien of FHA superior to the liens of SCN and Republic because SCN and Republic did not become holders of the warehouse receipts until after FHA perfected its security interest in the crops. This argument is without merit.

Generally, the holder of duly negotiated documents of title (such as the warehouse receipts held by SCN and Republic) gets title to the receipts as well as to the goods. S.C.Code § 36–7–502(1) (1976); *see also,* S.C.Code § 36–7–503 (1976); S.C. Code § 36–9–304 (1976), Official Comment 2. FHA contends that it qualifies for an exception to this rule under § 36–7–503(1) which states:

(1) A document of title confers no right in goods against a person who before issuance of the document had a legal interest or a perfected security interest in them and who neither

(a) delivered or entrusted them or any document of title covering them to the bailor or his nominee with actual or apparent authority to ship, store or sell or with power to obtain delivery under this chapter (§ 36–7–403) or with power of disposition under this act (§§ 36–

2–403 and § 36–9–307) or other statute or rule of law; nor

(b) acquiesced in the procurement by the bailor or his nominee of any document of title.

But FHA is not entitled to such exemption because it knowingly allowed the debtor to obtain the warehouse receipts without either objection or any attempt to remove these receipts from the possession of the debtor. Therefore, FHA is found to have "acquiesced" in the debtor's procurement of the warehouse receipts as proscribed by § 36–7–503(1)(b). Warehouse receipts are commonly accepted by lending institutions as collateral for farm loans. Possession of the warehouse receipts in this case entitled SCN and Republic to possession of the peanuts upon the presentation of the receipts to the state warehouse. In fact, the creditors recovered the peanuts, found a buyer, and delivered them to the buyer. FHA knew, or should have known, that because the debtor was being issued warehouse receipts for the peanuts subject to the FHA crop lien, there existed the possibility that the receipts would be negotiated as loan collateral. FHA was in a position to have prevented such action by the debtor and failed to do so. Under the circumstances of this case, it cannot be reasonably held that FHA, with its knowledge of the debtor's having stored the peanuts and having received negotiable warehouse receipts therefor, is entitled to having its security interest take priority over the negotiable warehouse receipts. *U.S. v. Hext,* 444 F.2d 804 (5th Cir.1971).

It is interesting to note Official Comment 1 to § 36–7–503 as interlaced with this court's explanations:

A ... mortgagor [i.e., the debtor] [cannot] defeat any rights of a ... mortgagee [i.e., FHA] which have been perfected under the local law merely by wrongfully shipping or storing a portion of the crop or other goods. However, "acqui-

---

**1.** Each of the warehouse receipts bears a legend stating:

Under the statute laws of South Carolina, this receipt carries absolute title to the products

herein described which will be delivered only upon presentation of this receipt and payment of all warehouse charges and expenses.

escence" by the [mortgagee] does not require active consent under subsection (1)(b) and knowledge of the likelihood of storage or shipment with no objection or effort to control it is sufficient to defeat his rights as against one who takes by "due" negotiation of a negotiable document.

Accordingly, this court holds that the liens of SCN and Republic on the crop proceeds are superior to and take precedence over the crop lien held by FHA.

## ORDER

The Trustee should distribute the peanut crop proceeds to SCN and Republic, *pro rata*, based upon ownership rights of SCN to one hundred-forty (140) tons of peanuts and Republic to ten (10) tons of peanuts.

AND IT IS SO ORDERED.